IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | § § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | CIVIL ACTION NO. 7:19-CV-107 |
| THE ODESSA FAMILY YMCA, | | |
| Defendant. | | |

**PHILADELPHIA INDEMNITY INSURANCE COMPANY'S
ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia"), through the undersigned attorneys, files this Original Complaint for Declaratory Judgment against Defendant The Odessa Family YMCA ("Defendant") and alleges:

**NATURE OF THE ACTION**

1. This is an action for declaratory relief pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202 for the purpose of resolving an actual, substantial and justiciable controversy among the parties concerning their legal rights, duties and relationships with respect to an insurance policy issued by Philadelphia to Defendant. Philadelphia requests that the Court declare the rights of the parties with respect to a property insurance claim Defendant submitted under the policy and a subsequent appraisal award.

2. Specifically, Philadelphia seeks a judgment from this Court declaring that Philadelphia is not bound by the appraisal award because it was: (1) made without authority; (2) made as a result of fraud, accident, or mistake; and/or (3) not in compliance with the requirements

of the policy. Philadelphia also seeks a judgment from this Court declaring that the insurance policy does not provide coverage for certain damages included in the award.

## PARTIES

3. Plaintiff Philadelphia Indemnity Insurance Company is a corporation organized under the laws of the state of Pennsylvania with its principal place of business in Bala Cynwyd, Pennsylvania. For purposes of diversity, Philadelphia is a corporate citizen of Pennsylvania.

4. Defendant The Odessa Family YMCA is a domestic not-for-profit corporation with its principal place of business at 3001 E. University Boulevard, Odessa, Texas 79762. For purposes of diversity, Defendant is a corporate citizen of Texas. The Odessa Family YMCA can be served by serving its registered agent, Edward Moreno, at 3001 E. University Boulevard, Odessa, Texas 79762.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), based on diversity of citizenship of the parties. In addition, the repair costs at issue exceed $75,000, exclusive of interest and costs.

6. Pursuant to 28 U.S.C. § 1391(a)(1), venue is proper in the Western District of Texas because Philadelphia issued a policy of insurance to Defendant in this District, the property insured under that policy is within this District, and a substantial part of the events or omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

I. **The Policy**

7. Philadelphia issued a commercial insurance policy under number PHPK1520676 to Defendant with a policy period July 1, 2016 to July 1, 2017 (the "Policy"). A true and correct copy of the Policy is attached as Exhibit "A."

8. The Policy provides commercial property coverage for several buildings owned by Defendant. Defendant's building at 3001 E. University Boulevard in Odessa carries a limit of insurance of $5,730,000 for the building and $1,000,000 for business personal property. Pursuant to a Multiple Deductible Form Endorsement, a deductible of $10,000 applies to all losses from windstorm and/or hail at the University Boulevard location.

9. The Policy includes a Causes of Loss – Special Form, which states that coverage is provided for risks of direct physical loss unless the loss is otherwise subject to an exclusion or limitation. Relevant to this action, the Policy excludes coverage for: wear and tear; and rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself. *See* Policy, Causes of Loss- Special Form, B. Exclusions, ¶¶ 2.d.(1) and 2.d.(2).

10. In addition, the Policy excludes coverage for faulty, inadequate, or defective: design, specifications, workmanship, repair, construction, renovation, remodeling; materials used in repair, construction, renovation, or remodeling; or maintenance; of part or all of any property on or off the described premises. *See* Policy, Causes of Loss- Special Form, B. Exclusions, ¶¶ 3.c.(2)-(4).

11. The Policy also contains a Cosmetic Damage To Roof Caused By Hail endorsement, which states as follows:

> We do not cover cosmetic loss or damage to roof coverings caused by the peril of hail.
>
> Cosmetic loss or damage means only that damage that alters the physical appearance of the roof covering but does not result in damage that allows the penetration of water through the roof covering or does not result in the failure of the roof covering to perform its intended function, to keep out elements over an extended period of time.
>
> We do cover hail damage to roof coverings that results in damage that will allow the penetration of water through the roof covering or that results in the failure of the roof covering to perform its intended function, to keep out elements over an extended period of time.

<u>ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT</u>                                                              PAGE 3

> Roof covering means the roofing material exposed to the weather, the underlayments applied for moisture protection, and all flashings required in the replacement of a roof covering.

12. The Policy contains the following appraisal provision for building losses in the Texas Changes endorsement:

> **Appraisal**
>
> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each party will:
>
> **a.** Pay its chosen appraiser; and
>
> **b.** Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal:
>
> **a.** You will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Commercial Property Condition; and
>
> **b.** We will still retain our right to deny the claim.

### III. The Claim

13. On or about June 14, 2017, a hail storm passed through Odessa. On July 6, 2017, Defendant submitted a claim under the Policy for hail damage to its building at 3001 E. University Boulevard. Philadelphia assigned an independent adjuster to inspect and evaluate the damage to the building. Philadelphia also retained a structural engineer, a building consultant, and an HVAC consultant to inspect and evaluate the damage.

14. On or about August 17, 2017, Philadelphia issued a $250,000.00 advance payment to Defendant, to provide Defendant funds for temporary repairs and an initial draw for permanent repairs. Philadelphia subsequently issued additional payments to Defendant for the actual cash value of the damage to the property which Philadelphia estimated to be $581,347.46, including the

$250,000.00 advance. Philadelphia withheld depreciation in the amount of $316,903.31 which, pursuant to the Policy, Defendant could recover upon satisfying certain conditions, including completing the replacement of damaged property. Philadelphia also withheld $188,065.05 for code upgrades which, pursuant to the Policy, Defendant could recover upon satisfying certain conditions, including incorporating those code upgrades in its reconstruction or repair. Accordingly, Philadelphia estimated the total repair costs for the hail damage to the building in the amount of $1,086,315.82.

15. On or about November 6, 2017, Defendant hired a public adjuster to represent it with respect to the insurance claim. On July 26, 2018, the public adjuster sent Philadelphia a repair estimate totaling $2,131,627.42. Also on July 26, 2018, the public adjuster sent Philadelphia a Sworn Statement in Proof of Loss (the "Proof of Loss"). Defendant's representative signed the Proof of Loss on June 25, 2018, swearing that the full repair cost for the hail-related damage to the property totals $2,131,627.42. True and correct copies of the public adjuster's estimate and the Proof of Loss are attached as Exhibits "B" and "C."

16. The most significant difference between Philadelphia's repair estimate and the public adjuster's repair estimate relates to the removal and replacement of lightweight insulated concrete ("LWIC") on the steel decking of the building roofs. The public adjuster's estimate included costs to remove and replace 100% of the LWIC. The estimate Philadelphia's adjuster prepared includes the cost to remove and replace approximately 10% of the LWIC. This latter estimate was based on reports from the structural engineer and building consultant retained to assist in evaluating the hail-related damage. Those two consultants opined that only a small portion of the LWIC had gotten wet and required replacement as the result of moisture intrusion caused by roof damage from the June 2017 hail storm. Philadelphia's structural engineer further opined that up to 50% of the LWIC over the indoor swimming pool likely required replacement, but that such damage resulted

from condensation from the humidity caused by the swimming pool, and not the hail storm. Philadelphia's structural engineer and building consultant, as well as a general contractor, all agreed that the hail storm did not cause damage necessitating removal and replacement of 100% of the LWIC.

### IV. The Appraisal

17. On or about October 10, 2018, Defendant sent Philadelphia a letter stating:

> Please let this letter act as a request to dispute the value of our loss. The independent adjuster seems to have omitted various items that are still damaged and left off their estimate(s). We disagree with your decision and evaluation of our damages to our building's roof, exterior, HVAC and all associated items pertaining to our loss. We feel the entire roof decking system at 3001 E. University should be completely replaced due to the damage suffered; therefore, your estimate/adjustment is undervalued and disagrees with your evaluation of damage to our buildings.
>
> According to the policy, if either party does not agree with the amount of the loss, the loss can be appraised if either party sends a written demand of a dispute and demands appraisal.

Defendant demanded appraisal, as allowed under the Policy, and designated Sam Rogers as its appraiser. A true and correct copy of Defendant's letter of October 10, 2018, is attached as Exhibit "D."

18. Philadelphia responded on November 9, 2018, agreeing to participate in appraisal but advising:

> **In agreeing to proceed with appraisal, Philadelphia insists upon a stipulation of a line-item appraisal by the two appraisers, and if necessary, by the umpire, as there are components of Odessa Family YMCA's property damage claim for which there may not be damages and/or coverage under the insuring agreement**.

In that same letter, Philadelphia notified Defendant it had appointed Chad Fuller as its appraiser. A true and correct copy of Philadelphia's letter is attached as Exhibit "E."

19. On December 17, 2018, the undersigned attorney for Philadelphia sent an attorney representing Defendant an email with this discussion on a proposed form for the Appraisal Award:

> With regard to the attached Appraisal Award Form, please be advised that Philadelphia agreed to proceed with appraisal on the condition that your client stipulate to a line-item award given there are components of the claim for which there may be no coverage under the policy. Please see Philadelphia's letter of November 9, 2018. Accordingly, the attached form is not acceptable to Philadelphia.

> Defendant's attorney thereupon replied, on this point, as follows:

> As for the stipulation you reference and the objection to the form, it is my understanding that this form came from Philadelphia's appraiser, Mr. Fuller, but, if and when this matter gets to the issuance of an award, I am certain that the Umpire and the appraisers will work together to create a line-item award, which delineates all that is involved as that will make it easier for all to decipher and understand as coverage for same is evaluated.

A true and correct copy of this email exchange is attached as Exhibit "F."

20. The appraisers selected Mark Weeks as the umpire. On April 17, 2019, Mr. Weeks issued an Umpire's Appraisal Award for the University Boulevard location (the "Appraisal Award"). Mr. Weeks and Defendant's appraiser, Mr. Rogers, signed the Appraisal Award. Philadelphia's appraiser did not sign the Appraisal Award.

21. The Appraisal Award states that the replacement cost value of the damage the hail storm caused to the building totals *exactly* $5,000,000, including costs for unspecified building ordinance or law upgrades. Accordingly, the amount awarded for hail damage to the roof structure is 87% of the insured value of the *entire building*. The Appraisal Award specifies the actual cash value of that same work at $4,205,000. The Appraisal Award includes an additional amount of *exactly* $60,000 for business interruption/loss of income. A true and correct copy of the Appraisal Award is attached as Exhibit "G."

22. Philadelphia's counsel subsequently asked Mr. Weeks to provide all estimates, notes, and any other documentation explaining or supporting the Appraisal Award. To date, Mr. Weeks

has not made any response to that request. However, in response to an email Philadelphia's appraiser sent on April 15, 2019, Mr. Weeks stated the following:

> The dollar figure is based on replacement of the roof and deck over the entire area. I took Sam's and subtracted the duplicate items on his estimate, subtracted the tax and cleaned up a few small items. I did not complete [an] itemized estimate line by line [but] took both estimates provided to reach my number.

A true and correct copy of this email is attached as Exhibit "H."

23. The estimate prepared by Defendant's appraiser Sam Rogers, which Mr. Weeks relied upon in arriving at his award, reflects a replacement cost value for the repairs of $6,234,722.32. A true and correct copy of Mr. Rogers' estimate is attached as Exhibit "I." A review of Mr. Rogers' estimate reveals that it includes replacement of 100% of the LWIC on the building roof. It also includes figures for the above-mentioned business interruption/loss of income and extra expense coverage, even though Defendant never submitted a claim for business interruption/loss of income or extra expense to Philadelphia. Mr. Rogers' estimate also includes an amount to repair alleged hail damage to signs, even though Defendant never made a claim for hail damage to signs. There are also numerous instances of duplicate repair costs in Mr. Rogers' estimate. In short, the estimate on which the Appraisal Award is based includes items that were never part of Defendant's claim, are duplicative, are not the result of hail damage to the property, and are not covered under the Policy. The umpire's failure to provide a line-item breakdown of the award prevents Philadelphia – or anyone else – from determining how the umpire arrived at the dollar amounts it contains.

## CLAIMS FOR DECLARATORY RELIEF

24. Philadelphia incorporates by reference the foregoing paragraphs 1 through 23 of this complaint.

25. Philadelphia seeks a judicial declaration of the parties' rights and duties under the Policy, with respect to Defendant's hail damage claim, and the subsequent Award.

26. Specifically, Philadelphia seeks a judgment from this Court declaring that Philadelphia is not bound by the Appraisal Award because it was: (1) made without authority; (2) made as a result of fraud, accident, or mistake; and/or (3) not in compliance with the requirements of the policy.

27. Philadelphia also seeks a judgment from this Court declaring that Philadelphia is not bound by the Appraisal Award to the extent it includes costs for damages that were neither caused by, nor related to, the hail storm of June 14, 2017.

28. Philadelphia also seeks a judgment from this Court declaring that Philadelphia is not bound by the Appraisal Award to the extent it includes costs for damages that are excluded under the Policy.

## ATTORNEYS' FEES

29. Philadelphia incorporates by reference paragraphs 1 through 28 of this Complaint.

30. Philadelphia requests recovery of its attorneys' fees and costs pursuant to 28 U.S.C. § 2202 and Tex. Civ. Prac. & Rem. Code §§ 37.009 and 38.001.

## PRAYER

**WHEREFORE**, Plaintiff Philadelphia Indemnity Insurance Company requests that Defendant be cited to appear herein and that upon final trial hereof, Philadelphia has judgment against Defendant declaring that Philadelphia is not bound by the Umpire's Appraisal Award of April 17, 2019 and that Philadelphia has no obligation to make any further payments under the Policy on Defendant's claim for damage as a result of a hail storm on June 14, 2017. Philadelphia also prays for the recovery of reasonable attorneys' fees and costs of court, and all other relief the Court deems appropriate.

Respectfully Submitted,

*/s/ Lisa M. Henderson*
Lisa M. Henderson
State Bar No. 24025423
Admitted in Western District of Texas
lisa.henderson@clydeco.us
L. Kimberly Steele
State Bar No. 04127600
Admitted in Western District of Texas
kimberly.steele@clydeco.us
CLYDE & CO
10440 N. Central Expressway
Suite 800
Dallas, TX 75231
Telephone: 214.540.7539
Facsimile: 214.540.7540

ATTORNEYS FOR PLAINTIFF