IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | § § § § | |
| Plaintiff, | § § | |
| v. | § | CASE NO. 7:19-CV-00107-DC |
| THE ODESSA FAMILY YMCA, | § § § | |
| Defendant. | § § | |

**PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH A SUBPOENA TO PRODUCE DOCUMENTS**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia") files this motion to compel compliance with a subpoena for the production of documents served on non-party Sam Rogers on October 2, 2019, and in support thereof respectfully shows the Court as follows:

## I.   OVERVIEW OF THE CASE

Philadelphia seeks a declaration of its rights and obligations under a commercial property insurance policy issued to The Odessa Family YMCA (the "YMCA"), with respect to the YMCA's claim for damage to its facilities, arising out of a hail storm on June 14, 2017. Philadelphia investigated the claim and adjusted it in accordance with the terms and conditions of the policy, but the parties were not able to reach an agreement on the cost to repair the hail damage. YMCA demanded appraisal per the policy's appraisal provision and appointed Sam Rogers as its appraiser. Philadelphia appointed an appraiser and the two appraisers selected an umpire.

Thereafter, the umpire issued two appraisal awards, one for each of the YMCA facilities at issue. The awards were signed by Mr. Rogers, but not Philadelphia's appraiser. Philadelphia paid

one of the awards and partially paid the second award on the YMCA's facility at 3001 E. University Boulevard, Odessa, Texas. Philadelphia seeks this Court's declaration that this award should be set aside on the basis it was: (1) made without authority; (2) made as a result of fraud, accident, or mistake; and/or (3) not in compliance with the requirements of the policy. Philadelphia seeks a further declaration that it is not bound by the appraisal award to the extent it includes repair costs for damages that were pre-existing and/or not caused by the storm on June 14, 2017, or are otherwise excluded under the policy.

## II.   FACTUAL BACKGROUND

The appraisal awards were issued on April 17, 2019. Seven days later, on April 24, 2019, Philadelphia sent Sam Rogers a litigation hold notice. Declaration of Lisa Henderson ("Henderson Decl.") at ¶ 3 and Exhibit A. The letter instructed Mr. Rogers "to preserve, and not alter, modify or destroy, any materials, including electronically stored information and other records in his possession or control that in any way may relate to his engagement and actions taken in connection with the appraisals." *Id*. Mr. Rogers responded by email the same day, stating "I am not part of your battle" and contending his job for this appraisal was "completed." Henderson Decl. at ¶ 4 and Exhibit B. He made no mention of deleting documents, emails, or texts from his computer, cell phone and other electronic media or that he had already destroyed hard copy documents that were part of his file. *Id.*

On September 30, 2019, Philadelphia served a Notice of Subpoena for Production of Documents to Sam Rogers on all counsel of record and on October 2, 2019, Mr. Rogers was personally served with the subpoena. Henderson Decl. at ¶¶ 5, 6 and Exhibits C and D. The subpoena requested production of various categories of documents, including all documents,

electronically stored information ("ESI") and communications concerning the appraisal. Henderson Decl. at ¶ 5 and Exhibit C.

Seven days later, on October 9, 2019, Mr. Rogers sent an email to Philadelphia's counsel in response to the subpoena that attached a pdf of his estimate of repairs, an estimate of repairs prepared by Philadelphia's appraiser, and the two appraisal awards. Henderson Decl. ¶ 7 and Exhibit E. Later that same day, Mr. Rogers sent a second email attaching several additional documents including pull tests performed on the YMCA's roof and a report from a roofing consultant retained by Philadelphia. Henderson Decl. ¶ 8 and Exhibit F. Notably, and most relevant to this Motion, Mr. Rogers stated that "[u]sually once a file is completed with awards completed, I delete all doc, emails and reports except for the awards and the final scope." Henderson Decl. at ¶ 7 and Exhibit E.

Based on Mr. Roger's newly revealed information that he deleted electronically stored information from his computer, despite Philadelphia's litigation hold notice, Philadelphia sent him a meet and confer letter on October 16, 2019. Henderson Decl. at ¶ 9 and Exhibit G. In that letter, Philadelphia asked him to clarify his statement and to provide information that would allow it to determine whether it could recover any deleted files. *Id.* When Mr. Rogers did not respond to the letter, Philadelphia sent a follow-up letter on October 31, 2019. Henderson Decl. ¶ 10 and Exhibit H.

Shortly thereafter, Mr. Rogers retained counsel to represent him. Counsel for Philadelphia and counsel for Mr. Rogers, Kyle Fonville, exchanged emails in November 2019, in an attempt to reach an agreement on retaining a computer forensic expert to search Mr. Rogers' devices for responsive documents. Philadelphia proposed retention of an independent computer forensic expert, at its expense, who would be provided with access to Mr. Rogers' computers, cell phones and other

electronic devices or media in order to search for any communications with the umpire, Mr. Rogers' Xactimate files, and any invoices, bids, or other documents relating to the project at issue in the lawsuit. Henderson Decl. at ¶ 11 and Exhibit I. However, the parties were unable to reach an agreement and Mr. Fonville eventually did not return any calls or emails. *Id.* Mr. Rogers has since retained new counsel to represent him in this matter, but has still refused to produce any ESI relating to the appraisal.

### III.   ARGUMENTS AND AUTHORITIES

**A. Mr. Rogers has an obligation to fully comply with the subpoena.**

A subpoena may command production of documents, electronically stored information, or tangible things. Fed. R. Civ. P. 45(c)(2)(A). A subpoena to produce documents or electronically stored information "requires the responding person to permit inspection, copying, testing, or sampling of the materials." Fed. R. Civ. P. 45(1)(D). Non-parties are equally subject to Rule 45 subpoenas as parties. *Andra Group, LP v. JDA Software Group, Inc.*, 312 F.R.D. 444, 450 (N.D. Tex. 2015) ("Third-party status does not confer a right to obfuscation or obstinacy.") Therefore, "once properly served with a Rule 45 subpoena, a non-party is subject to discovery obligations that the subpoena imposes." *Id.* at 451. The scope of discovery for non-parties is also the same as for parties, namely whether the subpoena is "reasonably calculated to lead to evidence admissible as to [the] claims." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820 (5th Cir. 2004).

Here, the subpoena required Mr. Rogers to produce ESI, which is defined to include "all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, **deleted file** or file fragments . . ." Henderson Decl. at ¶ 5 and Exhibit C (emphasis added). The subpoena sought responsive electronic files on any kind of medium: "information stored on both personal and company-issued, owned, or

operated desktop or laptop computers, PDAs, cellular phones, smartphones, databases, hard drives, servers, backup tapes, archival tapes, voice mail memories, website log files, USB/flash drives, hard discs, floppy disks, CD-ROMs, online storage services, online communication services, and any other means or vehicle of ESI storage and/or transmittal." *Id.* This expansive definition includes any files relating to the appraisal that Mr. Rogers deleted from any media. However, ***despite the fact that Mr. Rogers never timely objected to Philadelphia's request for ESI***, he continues to refuse to produce any ESI relating to the appraisal. Mr. Rogers has also failed to confirm that he has produced all non-ESI documents relating to the appraisal.

### B. Mr. Rogers has refused to comply with the subpoena.

Philadelphia's subpoena is not a "fishing expedition." Instead, the requests are narrowly tailored to only seek documents relevant to the claims at issue. As noted above, the issues in this case are: (1) whether the appraisal award was made without authority; (2) whether the award is a result of fraud, accident, or mistake; (3) whether the award is in compliance with the requirements of the policy; (4) whether the award includes costs to repair damage that was not caused by the hail storm of June 14, 2017; and (5) whether the award includes costs to repair damage that is excluded under the policy.

The appraisers and umpire are the primary source of evidence on these issues, as the parties themselves are not participants in the appraisal process. Accordingly, it is imperative that Philadelphia obtain a full and complete response to its subpoena of Mr. Rogers' hard copy and electronic file materials. Mr. Rogers' electronic communications and documents regarding the appraisal are directly relevant to: (1) the bases for the award; (2) whether the award mistakenly includes items that were not part of the YMCA's claim and/or were not caused by the hail storm of June 14, 2017; (3) whether the award is the product of an independent, unbiased estimate of the

damages caused by the hail storm of June 14, 2017; and (4) whether there was any collusion between Mr. Rogers and the umpire in arriving at the award.

For example, the umpire did not produce a line-item award as previously agreed to by the parties. Instead, the award is only broken down between cost of repair, building code upgrades, and business interruption. The umpire advised the parties that his award is based on Mr. Rogers' estimate, with some edits that he could not remember and did not otherwise record. As the award was agreed to only by Mr. Rogers and the umpire, a review of the electronic communications between Mr. Rogers and the umpire may reveal the bases for the final award and whether it includes costs to repair damage that was not caused by the hail storm of June 14, 2017 or which are excluded under the policy.

In addition, a review of Mr. Rogers' electronic communications or documents may reveal whether or not the appraisal panel considered the amounts in dispute between Philadelphia and the YMCA. If the appraisal panel was mistaken about the amounts in dispute, then the award may be the result of a mistake and therefore subject to being set aside. If the appraisal panel did not even consider the amounts in dispute, then the award may be subject to being set aside on the basis that it was made without authority or not in compliance with the requirements of the policy, as the policy limits appraisal to the disputed loss amounts.

The policy also requires the appointment of an independent, fair and impartial appraiser. The award should likewise be the product of an independent, fair and impartial assessment of the cost to repair the damage caused by the hail storm of June 14, 2017, or it is subject to being set aside. There is some evidence in this case that Mr. Rogers did not prepare an independent assessment of the cost to repair the YMCA's hail damage. A review of Mr. Rogers' estimate, which was prepared on

Xactimate[1] software, and a review of the Xactimate estimate prepared by the YMCA's public adjuster, reveals that Mr. Rogers may have simply taken the public adjuster's esx file and increased the costs for certain line-items.[2] For example, there is certain bolded language in each of the estimates that is identical. Such language has to be specifically input by the operator, it is not provided by the software. Accordingly, the fact that the public adjuster's estimate and Mr. Rogers' estimate contains identical bolded language provides some evidence that Mr. Rogers was not acting as an impartial and unbiased appraiser. It would be extremely coincidental for both the public adjuster and Mr. Rogers to input identical language in the identical sections of their estimates. A review of Mr. Rogers' esx file, as well as his electronic correspondence, may provide evidence as to whether the award was the result of an independent, fair, and impartial appraisal process.

Pursuant to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Relevant information encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005). Unless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed. *Id.* For the reasons set forth above, Philadelphia has shown that

---

[1] Xactimate is a software program used to create estimates for the repair of property damage.
[2] An esx file extension is used to save files created by Xactimate software.

the discovery sought from Mr. Rogers does not just bear on the issues to be determined in this case but, instead, is directly relevant to those issues.

Further, it is "well accepted" that deleted computer files are discoverable. *See, e.g, M-I L.L.C. v. Stelly*, 2011 WL 12896025, at *2 (S.D. Tex. Nov. 21, 2011). Additionally, using a third-party expert is appropriate "when an opponent's document production is inadequate or there is some showing that a search of the computer may reveal relevant deleted materials." *John Crane Group Corp. v. Energy Devices of Texas, Inc.*, 2015 WL 11089486, at *3 (E.D. Tex. Feb. 2, 2015); *In re Triton Energy Ltd. Sec. Litig.*, 2002 WL 32114464, at *5 (E.D. Tex. Mar. 7, 2002) (in which the Court appointed a computer specialist to extract information in order to review and determine what relevant documents or electronic data, if any, were destroyed.)

Lastly, given the difficulty in obtaining Mr. Rogers' compliance, Philadelphia requests that the Court require Mr. Rogers to verify under oath that he has fully responded to the subpoena upon disclosure of the additional responsive documents. *See ORIX USA Corp. v. Armentrout*, 2016 WL 4095603, at *6 (N.D. Tex. 2016) (requiring a non-party to state under oath it has produced all responsive documents).

## IV.   CERTIFICATE OF CONFERENCE

The undersigned counsel certifies that in November and December 2019, I conferred with Mr. Rogers and his prior counsel, Mr. Fonville, in an effort to reach an agreement concerning the issues set forth in this Motion. In addition, I conferred with Mr. Rogers' current counsel, James McClenny, between March 2, 2020 and today in an effort to reach an agreement. An agreement was not reached and Philadelphia accordingly submits this Motion to the Court for determination.

## V.    CONCLUSION

FOR THESE REASONS, Plaintiff Philadelphia Indemnity Insurance Company respectfully requests that this Court grant its Motion to Compel Compliance with a Subpoena and compel Sam Rogers to:

1. confirm that he has produced all non-ESI documents sought by the subpoena;

2. provide answers to the questions set forth in Philadelphia's October 16, 2019 meet and confer letter;

3. at Philadelphia's expense, allow a forensic computer expert to search his computers, cellular telephone and voicemail for any Electronically Stored Information that may be responsive to Philadelphia's subpoena;  and

4. for any other further relief to which it may be justly entitled.

Respectfully Submitted,

*/s/ Lisa M. Henderson*
Lisa M. Henderson
State Bar No. 24025423
Admitted in Western District of Texas
lisa.henderson@clydeco.us
L. Kimberly Steele
State Bar No. 04127600
Admitted in Western District of Texas
kimberly.steele@clydeco.us
CLYDE & CO
10440 N. Central Expressway
Suite 800
Dallas, TX  75231
Telephone:    214.540.7539
Facsimile:    214.540.7540

BRIAN D. HARRISON
*Pro Hac Vice*
CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, CA  94105
brian.harrison@clydeco.us
Telephone:    415.365.9891
Facsimile:    415.359.7195

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document has been served on all counsel of record via ECF Notification on this 13th day of March, 2020.

>  /s/ Lisa M. Henderson
>  LISA M. HENDERSON